IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

WALTER DUANE WHITE,                :
                                    :
            Plaintiff,              :
                                    :   CIVIL NO. 3:CV-08-01388
        v.                          :
                                    :   (JUDGE VANASKIE)
WARDEN B.A. BLEDSOE, ET AL.,        :
                                    :
            Defendants.             :


MEMORANDUM

Background

Walter Duane White, proceeding pro se, filed this Bivens[1]-type complaint while previously confined at the United States Penitentiary, Lewisburg, Pennsylvania ("USP-Lewisburg").[2] Named as Defendants are four (4) USP-Lewisburg officials: Warden B.A. Bledsoe, Unit Manager Adami, and Correctional Counselors Chad Rice and Cavanaugh.[3]

---

[1] In Bivens, the Supreme Court held that a plaintiff may obtain damages for injuries caused by a federal agent acting "under color of his authority" in violation of a claimant's constitutionally protected rights. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 (1971).

[2] White is presently housed at the Beckley Federal Correctional Institution, Beaver, West Virginia. See Dkt. Entry # 39.

[3] Since Unit Manager Adami is clearly named as a Defendant in the Complaint, Plaintiff's request (Dkt. Entry # 37) that Adami be added as a Defendant will be denied as moot. Due to clerical error Adami was not previously listed as a defendant on the docket. As a result,
(continued...)

Service of the Complaint was previously ordered. See Dkt. Entry # 13.[4]

Plaintiff initially states that he was transferred to USP-Lewisburg from the Gilmer Federal Correctional Institution, Glenville, West Virginia (FCI-Gilmer) in retaliation for his filing of institutional grievances which questioned the adequacy of his medical care. On or about the first week of April, 2008, he was moved to a different cell at USP-Lewisburg "because of his diabetic medical needs." (Dkt. Entry # 1, ¶ 2.) However, his new cell was a "gang cell and [he] was approached by Inmate Carter to find another cell." (Id.) As a result, Plaintiff made a verbal request for a cell change to Counselor Cavanaugh. According to the Complaint, Cavanaugh advised Plaintiff to report to the prison's Segregated Housing Unit (SHU).

White indicates that because he felt that it was unfair for him to be put in the SHU, he submitted a written request for a cell change to Counselor Rice, which noted that if he was harmed that he would hold Rice and Cavanaugh responsible. The next day, Plaintiff met with Counselor Rice and informed the Defendant that he wished to withdraw his request because he "thought everything was smoothed over about the cell." (Id. at ¶ 4.) Rice allegedly lost his

---

[3](...continued)
he was not served with the Complaint.

[4] For the convenience of the reader of this Order in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

temper, telling Plaintiff that he would not be held responsible if the inmate was harmed, and engaged in verbal harassment for the purported purpose of attempting to provoke White into an altercation.

White claims that Unit Manager Adami intervened and called the prisoner into his office. During their ensuing conversation, Plaintiff purportedly told Adami about the situation and Rice's conduct. Next, White filed a grievance with Warden Bledsoe regarding Rice's actions. Bledsoe allegedly responded that the incident involving Rice never happened. (Id. at ¶ 5.) After filing a second similar grievance with Bledsoe, Plaintiff contends that he was "given a false, fabricated, manufactured incident report" in retaliation for the filing of his grievances. (Id. at ¶ 6.) He was found guilty of institutional misconduct following a disciplinary hearing and received various purportedly excessive sanctions, including a twenty-eight (28) day loss of good conduct time. Plaintiff asserts that it was improper for Rice to serve on the prison Unit Disciplinary Committee which recommended that a disciplinary hearing be held regarding the incident report and that maximum sanctions be imposed on White. (Id.)

The Complaint next alleges that Plaintiff was assaulted by Inmate Carter on June 30, 2008. (Id. at 5.) As a result of this altercation, White states that he suffered a chipped tooth, broken nose, an injury to his left shoulder, facial lacerations, and bruises. Plaintiff indicates that the attack could have been avoided if Defendants had given him a different cell. Following the incident, White was transferred to the SHU pending an investigation. While in the SHU he was

purportedly denied access to his legal work and research. As relief, Plaintiff seeks compensatory and punitive damages.

Defendants responded to the complaint by submitting a motion to dismiss or in the alternative for summary judgment on January 12, 2009. (Dkt. Entry # 26). The motion is ripe for disposition.

Discussion

Defendants' pending dispositive motion is supported by evidentiary materials outside the pleadings. Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d). The Court will not exclude the evidentiary materials accompanying the Defendants' motion. Thus, their motion will be treated as solely seeking summary judgment.

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis

that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

Exhaustion

Defendants' initial argument acknowledges that Plaintiff exhausted available administrative remedies with respect to his claim of being the victim of a retaliatory transfer from FCI-Gilmer to USP-Lewisburg. (Dkt. Entry # 28 at 13.) They do contend, however, that prior to bringing this action White "failed to exhaust the BOP administrative remedy process with regard to his complaints about his cell assignment, conversations he had with two staff counselors, complaints that he was assaulted by another inmate, complaints that he was placed in the SHU on non-punitive administrative detention, or complaints regarding the incident report of April 13, 2008." (Id. at 17.)

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001); see also Porter v. Nussle, 534 U.S. 516, 529-532 (2002). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248

F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The BOP has a well established three (3) step Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment. See 28 C.F.R. §§ 542.10-542.19. After attempting to informally resolve the issue, a BOP inmate can initiate the first step of the grievance process by submitting "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within twenty (20) calendar days "following the date on which the basis for the Request occurred." See 28 C.F.R. § 542.14(a). The Warden has twenty (20) calendar days from the date the Request or Appeal is filed in which to respond." See 28 C.F.R. § 542.18. If not satisfied with the Warden's response, an inmate may appeal (step two) on the appropriate form (BP-10) to the Regional Director within twenty (20) calendar days of the date the Warden signed the response. See 28 C.F.R. § 542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed (step three) on the appropriate form (BP-11) to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

A declaration under penalty of perjury submitted by USP-Lewisburg Supervisory Attorney L. Cunningham states that during the course of his federal confinement Plaintiff has

initiated 120 requests for administrative relief. (Dkt. Entry # 27-2,Exhibit A, ¶ 8.) Fourteen (14) of those grievances regarded events which transpired at USP-Lewisburg. (Id.) Cunningham avers that only 3 of those 14 USP-Lewisburg related grievances were administratively exhausted. (Id. at ¶ 10.)

According to Cunningham's declaration, one of White's three fully-exhausted grievances, No. 500554-A1, regarded Plaintiff's request to be transferred to a federal medical center and is unrelated to any of the claims currently pending before this Court. (Id. at ¶ 14.) The declarant acknowledges that Plaintiff's second fully exhausted grievance, No. 488774-A1, "included language complaining about his transfer from FCI-Glimer, which is an issue in this Current Complaint." (Id. at ¶ 11.) White's remaining exhausted grievance, No. 497724-A1, was an appeal of his May 22, 2008 disciplinary hearing. However, Defendants contend that his grievance was not filed until after the July 24, 2008 initiation of this action. Therefore, they conclude that any claims included therein are not properly before this Court because administrative exhaustion was not completed prior to the filing of this action as required under Ahmed, Tribe, and Oriakhi.

White opposes the non-exhaustion argument on the basis that he completed the BOP's administrative remedy procedure with respect to a grievance which challenged the legality of his transfer to USP-Lewisburg. Therefore, Plaintiff concludes that since the alleged unconstitutional conduct which subsequently occurred at USP-Lewisburg stemmed from the

alleged improper transfer, exhaustion was satisfied.  (Dkt. Entry # 35 at 4; Dkt. Entry # 31 at 1.)

It is apparent that the substance of Plaintiff's claims regarding his April, 2008 cell assignment at USP-Lewisburg and resulting conversations with correctional staff; his June 30, 2008 assault by Inmate Carter; White's placement in the SHU on non-punitive administrative detention; and the incident report of April 13, 2008 were not included in the grievance regarding his transfer to USP-Lewisburg.   Accepting Plaintiff's contention would clearly undermine the intent of the exhaustion requirement to afford correctional administrators the initial opportunity to discover and correct their own errors.  See  Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000).

White asserts that it would have been futile to exhaust administrative remedies after he was assaulted.  (Dkt. Entry # 31 at 1.)  It is initially noted that Plaintiff had ample time to seek administrative relief regarding fears for his safety that arose during April, 2008, months before the alleged June 30, 2008 assault by Inmate Carter.  Second, the attack by Carter is unrelated to the events underlying the misconduct charge and provides no reasonable explanation for White's failure to complete the BOP administrative remedy process with respect to said claim prior to the filing of this action.  And while White could not pursue a claim of failure to protect before the alleged assault, there was nothing that prevented him from following the administrative process after the assault.  To accept Plaintiff's contention would likewise be contrary to the stated purposes of the administrative exhaustion requirement.

In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the court held that "[f]ailure to

exhaust administrative remedies is an affirmative defense for the defendant to plead." See also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, it is the burden of a defendant asserting the defense to plead and prove it; Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

A review of the record shows that, with exception of White's contention of being the victim of a retaliatory transfer, Defendants have satisfied their burden under Williams of establishing that Plaintiff's pending claims were not properly exhausted. Furthermore, since White has not made any viable showing that he should be excused from compliance with the exhaustion requirement regarding any of his unexhausted claims, entry of summary judgment on the basis of non-exhaustion is appropriate with respect to those claims.[5]

Retaliation

Plaintiff's surviving claim asserts that Defendants retaliated against him for filing medical care based grievances at FCI-Gilmer by having him transferred to USP-Lewisburg. Defendants concede that this claim has been pursued through the administrative remedy process. However, they assert that because the conduct which led to the alleged retaliation was not

---

[5] Since this finding of non-exhaustion includes the allegations asserted against Unit Manager Adami, the Court will sua sponte enter dismissal in favor of said defendant. In this regard, under 28 U.S.C. § 1915A, a district court may "as soon as practicable" dismiss a complaint or any portion thereof if it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

constitutionally protected, a viable retaliation claim has not been stated. (Dkt. Entry # 28 at 19.) They also contend that "[n]one of the named defendants, all USP Lewisburg staff, had any input, personal involvement or authority to transfer the plaintiff from his previous institution to USP Lewisburg."[6] (Id.)

In order to state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).

In a supporting declaration made under penalty of perjury, Correctional Counselor Chad Rice states that his duties did not include "deciding an inmate's institution designation." (Dkt. Entry # 27-2, Exhibit 2, ¶ 4. According to Rice, inmate transfers and designations "are a

---

[6] Defendants also note that Plaintiff's transfer resulted from an increase in his custody classification score from medium to high. (Dkt. Entry # 28 at 21.) This increase stemmed from White being the subject of numerous incident reports.

centralized function" performed at a BOP facility located in Grand Prairie, Texas. (Id. at ¶ 4) Supporting declarations filed by Counselor Cavanaugh and Warden Bledsoe likewise state that they had no personal involvement whatsoever with respect to White's transfer from FCI-Gilmer to USP-Lewisburg. (Id. at Exhibits 3 & 4.) Bledsoe additionally notes that he was not even employed at USP-Lewisburg at the time Plaintiff was transferred there. Attorney Cunningham's declaration similarly notes that "[i]nstitution staff do not have the authority to determine designations and transfers." (Id. at Exhibit 1, ¶ 3.)

More importantly, Plaintiff himself states that "this complaint has nothing to do about retaliation or defendants being responsible for me being transferred to Lewisburg." (Dkt. Entry # 35 at 4.) Accordingly, since the undisputed facts establish that the Defendants had no personal involvement in Plaintiff's transfer to USP-Lewisburg and White indicates that he does not wish to pursue such a claim, entry of summary judgment in favor of Defendants on the retaliatory transfer claim is appropriate.

s/ Thomas I. Vanaskie  
Thomas I. Vanaskie  
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

WALTER DUANE WHITE, :
:
    Plaintiff, :
: CIVIL NO. 3:CV-08-01388
    v. :
: (JUDGE VANASKIE)
WARDEN B.A. BLEDSOE, ET AL., :
:
    Defendants. :

## ORDER

NOW, THEREFORE, THIS 24th DAY OF SEPTEMBER, 2009, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

1. Defendants' dispositive motion is construed as solely seeking summary judgment.

2. The Defendants' motion (Dkt. Entry # 26) for summary judgment is GRANTED.

3. Summary judgment is entered in favor of defendants on the retaliatory transfer claim. All other claims are dismissed, without prejudice, for failure to exhaust administrative remedies.

4  Plaintiff's motion (Dkt. Entry # 37) requesting that Unit Manager Adami be added as a Defendant is DENIED AS MOOT.

5. The Clerk of Court is directed to mark this matter CLOSED.

                                              s/ Thomas I. Vanaskie
                                              Thomas I. Vanaskie
                                              United States District Judge